FILED

OCT 0 1 2021

*Matthew Thuk*
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| Nikolas Weeks, | 1:20-CV-01029-CBK |
| Plaintiff, | |
| vs. | |
| City of Lake Norden, Jimmy Murphy, and South Dakota DCI, | **MEMORANDUM AND ORDER** |
| Defendants. | |

## I.   BACKGROUND

The Court is called upon to decide defendant South Dakota Department of Criminal Investigation's ("defendant," "DCI") motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), (b)(6) for lack of jurisdiction and for failure to state a claim upon which relief can be granted. MOTION TO DISMISS BY DEFENDANT SOUTH DAKOTA DCI, doc. 14. Plaintiff Nikolas Weeks ("plaintiff") filed suit, pro se, against DCI as well as the City of Lake Norden, South Dakota, former Lake Norden Police Chief Jimmy Murphy, Lake Norden City Attorney Todd Boyd, Lake Norden Mayor Jason Aho, and Mr. Dan Koistinen, a maintenance worker for the City, on November 18, 2020. Doc 1. Mr. Weeks raises claims against defendant DCI, when construing his assertions liberally, for violations of the United States Constitution, brought via 42 U.S.C. § 1983, including allegations of defamation, discrimination, and suppression of evidence. Because this matter is disposed of on state sovereign immunity grounds, the Court does not delve into the appropriateness of plaintiff's specific claims against this defendant under § 1983.

Plaintiff's host of claims and allegations against all the defendants span a few years and several series of events. This opinion and order only examines facts relevant to

Mr. Weeks' claims against DCI. For purposes of deciding defendant's motions to dismiss, the Court examines plaintiff's assertions, taking all feasible claims as true. Mr. Weeks alleges that DCI assisted defendant Murphy with a defamation campaign, which alongside the discrimination campaign, commenced on March 1, 2019.[1] COMPLAINT, doc. 1 at 3–4. This is also when the supposed suppression of evidence took place. Id. Further, plaintiff alleges DCI altered dash cam footage concerning him. REPLY TO DEFENDANTS' MOTION TO DISMISS." See REPLY TO DEFENDANTS' MOTION TO DISMISS, doc. 16 at 3.

## II.    DISCUSSION

### A. Legal Standard

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court assumes that all facts in the complaint are true and construes any reasonable inferences from those facts in the light most favorable to the nonmoving party. Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008). To decide the motion, the court may consider the complaint, materials that are part of the public record, or materials necessarily embraced by the complaint. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). The complaint must contain "enough facts to state a claim to relief that is plausible on its face" to survive the motion to dismiss. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . ." Id. at 555. In addition, the factual contents of the complaint must "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Braden v. Walmart Stores, 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Nevertheless, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). When

---

[1] Mr. Weeks identifies the allegations to have taken place "March 1st, 2109." See COMPLAINT, doc. 1 at 4. The Court assumes plaintiff meant to write "March 1, 2019," as he noted in his "REPLY TO DEFENDANTS' MOTION TO DISMISS." See REPLY TO DEFENDANTS' MOTION TO DISMISS, doc. 16 at 2.

assessing the merits of a complaint challenged under Federal Rule of Civil Procedure 12(b)(6), a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679.

It requires noting that complaints by pro se plaintiffs' must "be given liberal construction." Solomon v. Petray, 795 F.3d 777, 787 (8th Cir. 2015); accord Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007).

That said, pro se litigants must still present cognizable legal claims to this Court. Although the Court must accept as true any well-pleaded facts, the Court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." Solomon, 795 F.3d at 787 (*quoting* Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004)). But "the court need not act as a clairvoyant, trying to read the tea leaves of a pro se motion to determine what the movant actually seeks. A litigant, even a pro se one, bears some responsibility for advocating for himself." In re Heyl, 609 B.R. 194, 202 (B.A.P. 8th Cir. 2019).

### B. Whether DCI is Immune from Suit Pursuant to State Sovereign Immunity

The "preeminent purpose" of state sovereign immunity is ensuring the "dignity that is consistent with [states'] status as sovereign entities." Fed. Mar. Comm'n v. South Carolina State Ports Auth., 535 US 743, 760 (2002). While states gave up certain authorities and freedoms upon entering our federalist system, immunity from private suit was not one of them. See id. ("'The founding generation thought it neither becoming nor convenient that the several States of the Union, invested with that large residuum of sovereignty which had not been delegated to the United States, should be summoned as

3

defendants to answer the complaints of private persons.'") (*quoting* Alden v. Maine, 527 U.S. 706, 748 (1999)).

Our Constitution's Eleventh Amendment awards states immunity from suit under sovereign immunity, preventing federal courts from hearing suit against a state. Seminole Tribe of Florida v. Florida, 517 US 44, 54 (1996). [2]  Federal courts may only exercise jurisdiction over such matters when (1) the state consents; or (2) Congress has abrogated the state's immunity.  See Doe v. Nebraska, 345 F.3d 593, 597 (8th Cir. 2003) (explaining states can waive sovereign immunity); Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 672 (1999) (explaining that Congress can only abrogate state sovereign immunity when "rel[ying] upon § 5 of the Fourteenth Amendment" to the United States Constitution).  See also Kentucky v. Graham, 473 U.S. 159, 169 ("The Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court.").

Immunity from suit extends beyond the state itself, but also offers protection to its agencies. See Larson v. Kempker, 414 F.3d 936, 939 n.3 (2005) ("Eleventh Amendment immunity bars a § 1983 lawsuit against a state agency or state official in official capacity even if the entity is the moving force behind the deprivation of the federal right.").  And while state *officials* "may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment, the same doctrine does not extend to states or state agencies."  Monroe v. Arkansas State Univ., 495 F.3d 591, 594 (8th Cir. 2007).

Here, the question is whether plaintiff's suit against DCI is barred due to the agency's state sovereign immunity.  Pursuant to SDCL 23-3-6, defendant is under the "control of the attorney general as a division of his department."  See also State v.

---

[2] State sovereign immunity goes beyond the confines of the text of the Eleventh Amendment, also touching upon common law immunity principles.  See Fed. Mar. Comm'n v. South Carolina State Ports Auth., 535 US 743, 753 (2002) (noting that the Eleventh Amendment "is but one exemplification" of sovereign immunity).  See also Idaho v. Couer d'Alene Tribe of Idaho, 521 US 261, 267 (1997) ("The Court's recognition of sovereign immunity has not been limited to the suits described in the text of the Eleventh Amendment.").

Phillips, 489 NW2d 613, 615 n.2 (S.D. 1992) ("The DCI is a division of the Attorney General's Office."). The attorney general is an elected executive officer for South Dakota. See, e.g., SDCL Art. 4, § 7 (identifying the attorney general as one of South Dakota's statewide elected officials). Accordingly, plaintiff's numerous constitutional claims for monetary relief against defendant, including defamation, discrimination, and suppression of evidence, purportedly alleged pursuant to 42 U.S.C. § 1983, cannot be brought because DCI is awarded state sovereign immunity. The Court also finds that assertions of federal diversity jurisdiction pursuant to 28 U.S.C. § 1332 made in plaintiff's briefing is not related to the suit against DCI, and thus does not discuss why there is no diversity jurisdiction for this matter and defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is partially moot.

### III.   CONCLUSION

Because plaintiff seeks to bring suit for monetary relief against an arm of the State, his claims against DCI should be dismissed.

IT IS HEREBY ORDERED that defendant's motion to dismiss for failure to state a claim, doc. 14, is granted and this action is dismissed as to the DCI, with costs to be taxed by the clerk.

DATED this / st day of October, 2021.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

5