

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| Nikolas Weeks,<br><br>Plaintiff,<br><br>vs.<br><br>City of Lake Norden and Jimmy Murphy,<br><br>Defendants. | 1:20-CV-01029-CBK<br><br><br><br>**MEMORANDUM AND ORDER** |

## I.  BACKGROUND

For a third time, the Court addresses a motion to dismiss against plaintiff Nikolas Weeks ("plaintiff") brought in this suit. Here, the City of Lake Norden ("defendant," "the City") moves to dismiss plaintiff's claim against it for a failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). DEFENDANT CITY OF LAKE NORDEN'S MOTION TO DISMISS, doc. 28. Lake Norden is within Hamlin County, South Dakota. Mr. Weeks filed suit, pro se, against the City as well as former Lake Norden Police Chief Jimmy Murphy, Lake Norden City Attorney Todd Boyd, Lake Norden Mayor Jason Aho, Mr. Dan Koistinen, a maintenance worker for the City, and South Dakota DCI on November 18, 2020. Doc. 1. The Court has already granted motions to dismiss pertaining to Mr. Boyd, Mr. Aho, Mr. Koistinen, and South Dakota DCI. Docs. 33 & 34.

Plaintiff brings a wide host of claims against all defendants spanning several incidents and years. Relevant to this motion is that Mr. Weeks alleges the City violated his rights under the United States Constitution, brought via 42 U.S.C. § 1983, including excessive force, false arrest, malicious prosecution, and defamation through its employees. COMPLAINT, doc. 1. The plaintiff's pro se complaint also targets the City and its town council for "fully support[ing] all of [defendant] Jimmy Murphy's actions

and this attempt on [his] life even to this day." Id. at 3. The gravamen of plaintiff's claims, when construing the allegations liberally for Mr. Weeks, against Lake Norden revolve around whether the City can be found liable under Monell v. Department of Social Services, 436 U.S. 658 (1978).

For purposes of deciding defendant's motion to dismiss, the Court examines plaintiff's assertions, taking all feasible claims as true.

## I. DISCUSSION

### A. Legal Standard

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court assumes that all facts in the complaint are true and construes any reasonable inferences from those facts in the light most favorable to the nonmoving party. Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008). To decide the motion, the court may consider the complaint, materials that are part of the public record, or materials necessarily embraced by the complaint. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). The complaint must contain "enough facts to state a claim to relief that is plausible on its face" to survive the motion to dismiss. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . ." Id. at 555. In addition, the factual contents of the complaint must "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Braden v. Walmart Stores, 588 F.3d 585, 594 (8th Cir. 2009) (*quoting* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Nevertheless, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (*quoting* Twombly, 550 U.S. at 555). When assessing the merits of a complaint challenged under Federal Rule of Civil Procedure 12(b)(6), a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679.

It requires noting that complaints by pro se plaintiffs' must "be given liberal construction." Solomon v. Petray, 795 F.3d 777, 787 (8th Cir. 2015); accord Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007).

That said, pro se litigants must still present cognizable legal claims to this Court. Although the Court must accept as true any well-pleaded facts, the Court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." Solomon, 795 F.3d at 787 (*quoting* Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004)). But "the court need not act as a clairvoyant, trying to read the tea leaves of a pro se motion to determine what the movant actually seeks. A litigant, even a pro se one, bears some responsibility for advocating for himself." In re Heyl, 609 B.R. 194, 202 (B.A.P. 8th Cir. 2019).

### B. Whether the City can be Held Liable Under Monell

Municipalities are not liable under Section 1983 "solely because it employs a tortfeasor." Bolderson v. City of Wentzville, Missouri, 840 F.3d 982, 985 (8th Cir. 2016) (*citing* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). Instead, "[l]iability for a constitutional violation will attach to a municipality only if the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee." Id. (*citing* Atkinson v. City of Mountain View, 709 F.d 1201, 1214 (8th Cir. 2013)). Each of these three routes of municipal liability are examined.

The gravamen of plaintiff's claims against the City derive from, as best the Court can tell from the pro se pleadings, is the (1) actions of its municipal employees, defendant Murphy and Mr. Koistinen, purportedly attacking him in February 2016; (2) the City's

3

supposed continued support of attempts on Mr. Weeks' life; and (3) malicious prosecution on the part of the City's employee, Mr. Boyd. Before delving into the possible avenues to municipal liability, the Court disposes of the malicious prosecution claim raised against the City. As the Court has previously held, claims derived from the first bout of litigation that Mr. Weeks was engaged with concerning his February 2016 encounter with defendants Murphy and Koistinen are time-barred. See MEMORANDUM AND ORDER GRANTING MOTION TO DISMISS (Boyd, Aho, & Koistinen), doc. 33.

When construing claims liberally for the pro se plaintiff, the Court assumes that the (1) actions of defendants Murphy and Koistinen in February 2016 are directly tied to the City's (2) ongoing supposed support of attempts on his life, and for sake of defendant's motion to dismiss, the Court will analyze the time-barred actions by former Chief Murphy and Mr. Koistinen as within the statute of limitations under a theory of one continued constitutional tort.

First, construing the pro se plaintiff's allegations liberally, Weeks fails to identify an official municipal policy that gives rise to the claims raised against the City's former employee, defendant Murphy. While plaintiff states that "[t]he city of [L]ake Norden the mayor and the city council fully support all of Jimmy Murphy's actions and this attempt on my life even to this day," he fails to identify an *actual official policy* that would lead to liability under Monell. COMPLAINT, doc. 1 at 3. First, Mr. Weeks does not identify an actual directive voted on, agreed to, or released by Lake Norden's city council. While "[n]o one has ever doubted . . . that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body," there must be an *actual decision* to give way to a claim for municipal liability. Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). Instead of providing specific policies promulgated by the city council or some other arm of Lake Norden's municipal government, Weeks rests on conclusory allegations.

Further, the alleged conduct by defendant Murphy and Mr. Koistinen was not conducted by individuals with final decision-making authority. See id. at 483 (holding for municipal liability to be found because of official policy, the official in question must

4

be "responsible for establishing final government policy respecting such activity."). Here, there is no evidence provided to the Court that defendant Murphy would have had the authority, on his own, to be the final decision-maker when taking actions that Mr. Weeks alleges constituted "attempted murder." COMPLAINT, doc. 1 at 2. Because plaintiff fails to identify any official policy by the City, it cannot be held liable under such a theory of municipal liability derived from official policies by a final decision-maker.

Next, the Court turns to whether there was an unofficial custom on the part of defendant that would give rise to municipal liability for the actions pursued by Mr. Murphy. While a municipal policy is a "'deliberate choice to follow a course of action,'" custom is less rigidly defined. Jane Doe A v. Special Sch. Dist. of St. Louis Cnty, 901 F.2d 642, 645 (8th Cir. 1990) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986)). Instead, custom relates to a "pattern of 'persistent and widespread' unconstitutional practices which become so 'permanent and well settled' as to have the effect and force of law." Id. at 646 (quoting Monell, 436 U.S. at 691). This unofficial custom must be "so pervasive among non-policymaking employees of the municipality that it effectively has the force of law." Bolderson v. City of Wentzville, Missouri, 840 F.3d 982, 986 (8th Cir. 2016) (citing Ware v. Jackson Cnty., Missouri, 150 F.3d 873, 880 (8th Cir. 1998)). Crucially, "[a]n unconstitutional custom or usage cannot arise from a single act." Id. (citing McGautha v. Jackson Cnty., Missouri Collections Dep't, 36 F.3d 53, 57 (8th Cir. 1994)).

Detrimental to Mr. Weeks' case is the fact that the alleged hook for municipal liability under an unofficial custom theory is that the City's supposed pattern of unconstitutional practices ultimately boils down to a single act. See Wedemeier v. City of Ballwin, Missouri, 931 F.2d 24, 26 (8th Cir. 1994) ("[A] single deviation from a written, official policy does not prove a conflicting custom or usage.") (citing Williams-El v. Johnson, 872 F.2d 224, 230 (8th Cir. 1989), cert. denied, 493 U.S. 824 (1989)). Here, there is only one instance of municipal employees, defendants Murphy and Koistinen, supposedly violating his constitutional rights. Without more, there can be no

pattern of pervasive conduct to impose municipal liability on Lake Norden for an unofficial custom or policy.

Finally, the Court turns to whether the City can be found liable under a failure to train or supervise theory. Municipal agencies may be found liable for a failure to train under § 1983 "where the failure to train amounts to deliberate indifference to the rights of persons with whom [the agency] came into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). Weeks must "establish that [the City] had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Thelma D. v. Bd of Educ. of City of St. Louis, 934 F.2d 929, 934 (8th Cir. 1991). See also Harris, 489 U.S. at 396 (O'Connor, J., concurring in part and dissenting in part); Larkin v. St. Louis Hous. Auth. Dev. Corp., 355 F.3d 1114, 1117–18 (8th Cir. 2004).

The United States Supreme Court has made clear that such a theory of "municipal" liability may only apply in "limited circumstances." Harris, 489 U.S. at 387 (Majority Opinion). To do otherwise would be to "go forward under § 1983 on a lesser standard of fault would result in *de facto respondeat superior* liability on municipalities," which was firmly rejected by the United States Supreme Court in Monell. Id. at 392. Further, "[i]t would also engage the federal courts in an endless exercise of second-guessing municipal employee-training programs. This is an exercise we believe the federal courts are ill suited to undertake, as well as one that would implicate serious questions of federalism." Id.

The requisite showing of deliberate indifference through sufficient notice may be implied through two separate avenues: (1) "where failure to train . . . employees is so likely to result in a violation of constitutional rights that the need for training is patently obvious;" *or* (2) "where the need for additional training may not be obvious from the outset, but a pattern of constitutional violations could put the municipality on notice that its employees' responses to a regularly recurring situation are insufficient to protect the constitutional rights of its citizens." Thelma D., 929 F.2d at 934 (*citing* id. at 390 & n.10, 397).

Here, plaintiff fails to plead a failure to train or supervise claim against defendant. Municipal liability for failure to train or supervise only applies in "limited circumstances." Harris, 489 U.S. at 387. But Weeks asks this Court to turn § 1983 into a "*de facto respondeat superior liability* on municipalities," a notion firmly rejected in Monell. Id. at 392. There is no indicia that the City (1) failed to properly train its law enforcement personnel, such as defendant Murphy, which could result in a violation of constitutional rights when plaintiff does not even contend there was an inadequacy of training for the Lake Norden Police Department; and (2) there is simply no pattern of constitutional violations when the only allegation against the City – through its former police chief – is a single act, meaning there can be no "*pattern* of constitutional violations" so obvious as to imply deliberate indifference. Thelma D. v. Bd of Educ. of City of St. Louis, 934 F.2d 929, 935 (8th Cir. 1991) (emphasis added). Even when the "pro se pleadings are [] construed liberally," plaintiff has failed to plead municipal liability under deliberate indifference. Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984).

Because the Court finds plaintiff failed to state a custom, policy, or practice that could extend liability to the City for the alleged actions of defendant Murphy and Mr. Koistinen, defendant's second argument concerning whether there was an appropriate nexus between a Lake Norden policy and the alleged harm is moot.

### C. Plaintiff's Malicious Prosecution Claim is Time-Barred

As the Court has previously held in this matter, plaintiff's malicious prosecution claim is time-barred. MEMORANDUM AND ORDER GRANTING MOTION TO DISMISS (Boyd, Aho, & Koistinen), doc. 33 at 4–5.

## II. CONCLUSION

Because plaintiff fails to pierce the City's municipal immunity, his claims against Lake Norden should be dismissed.

IT IS HEREBY ORDERED that defendant's motion to dismiss for failure to state a claim, doc. 29, is granted and this action is dismissed as to the City of Lake Norden, with costs to be taxed by the clerk.

DATED this 7th day of October, 2021.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge